**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: _____

SECURITIES AND EXCHANGE COMMISSION,   )
                                     )
           **Plaintiff,**             )
                                     )
v.                                   )
                                     )
**CRAIG V. SIZER and MIGUEL MESA,**   )
                                     )
           **Defendants.**            )
_____ )

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows:

## INTRODUCTION

1. The Commission brings this action against Craig V. Sizer and Miguel Mesa (collectively "Defendants") for violating the antifraud and broker-dealer registration provisions of the federal securities laws and thereby defrauding at least 600 investors nationwide out of approximately $20 million.

2. Beginning at least as early as 2009 and until August 2015, Defendant Sizer hired Mesa to operate boiler-rooms in South Florida and Southern California to sell shares of Sanomedics, Inc. ("Sanomedics") and Fun Cool Free, Inc. ("Fun Cool Free") (collectively "the Companies"). Sizer provided Mesa with pitch points for the boiler-room sales agents containing materially misleading statements regarding the Defendants' use of investor proceeds, which Mesa used to draft materially misleading boiler-room sales scripts. Mesa hired and oversaw boiler room sales agents who used the sales scripts to cold-call and fraudulently convince investors to purchase shares of the Companies' stock.

3. Sizer, directly and through Mesa's boiler room sales agents, and Mesa, through his boiler room sales agents, made material misrepresentations and omissions to investors in the Companies' stock regarding the payment of commissions to the sales agents. At Sizer and Mesa's instructions, sales agents falsely told investors that no commissions or fees would be charged or paid for their purchase of Sanomedics and Fun Cool Free stock. Contrary to the representations made to investors and with Sizer's agreement, Mesa used investor funds to pay commissions of between 15% and 20% to the sales agents. At times, Sizer also solicited investors directly by telephone and sold shares of the Companies' stock to investors using these misrepresentations and omissions.

4. Mesa also took active steps to conceal the boiler room operation by directing sales agents to falsely represent that they were employees of Sanomedics or Fun Cool Free.

5. Sizer, directly and through Mesa's boiler room sales agents, and Mesa, through his boiler room sales agents, also made material misrepresentations and omissions to prospective investors regarding the use of the funds provided by the investors. Sizer and Mesa directed the sales agents to represent that the funds would be invested in the Companies, including research and development for Sanomedics and the acquisition of another company for Fun Cool Free. Instead, Sizer and Mesa misappropriated approximately 90% of the investor proceeds they raised.

6. Defendant Sizer used at least $3 million of misappropriated investor proceeds for his own personal benefit, including paying for personal expenses such as credit cards, residential renovations, luxury automobiles, and mortgage payments, and through ATM withdrawals and checks written to himself and others. Defendant Mesa used his share of the misappropriated

investor funds to finance the boiler room operation, pay commissions to his boiler-room sales agents, and for his own use and personal benefit.

7.  Moreover, because Defendant Mesa was not registered with the Commission as a broker or dealer, he acted as an unregistered broker in violation of the registration requirements of the federal securities laws when he offered and sold shares of the Companies' stock to investors.  Defendant Sizer aided and abetted Defendant Mesa in acting as an unregistered broker by hiring Mesa to operate the boiler room knowing that (1) Mesa was not registered with the Commission as a broker or dealer, and (2) that Mesa would hire and direct the boiler-room sales agents to offer and sell shares of the Companies' stock and pay them commissions.

8.  Through their fraudulent conduct, the Defendants received millions of dollars of investor proceeds by violating Section 17(a) of the Securities Act of 1933 ("Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder. In addition, Defendant Mesa violated Section 15(a) of the Exchange Act and Defendant Sizer aided and abetted Defendant Mesa's violations of Section 15(a) of the Exchange Act.  Unless restrained and enjoined, the Defendants are reasonably likely to engage in future violations of the federal securities laws.

## THE DEFENDANTS

9.  **Sizer**, age 48, a resident of Aventura, Florida, was the co-founder and former Chief Executive Officer of Sanomedics and the former president and chairman of Fun Cool Free. Sizer was a registered representative formerly associated with the broker-dealers Investors Associates, Inc. (1992-1993) and American Investment Services, Inc. (1995-1996).  Sizer is not, and was not at the time of the conduct described herein, registered with the Commission as a broker or dealer or associated with one.

10. **Mesa**, age 56, a resident of Miami Lakes, Florida, hired unregistered sales agents to offer and sell to investors the securities of Sanomedics and Fun Cool Free. In 2004 and 2006, the Commodities Futures Trading Commission ("CFTC") charged Mesa in separate civil injunctive actions alleging antifraud violations involving trading in futures contracts and options. *See, CFTC v. Brickell Key Financial, LLC, et. al.*, Case No. 04-22549-CIV-PAS (S.D.FL. 2004); and *CFTC v. First International Group, Inc.*, Case No. 06-20979-CIV-AJ (S.D.FL. 2006). Final judgments in those two cases were entered against Mesa enjoining him from future violation of laws related to commodities futures transactions and he was permanently barred from the commodities industry. Mesa is not, and was not at the time of the conduct described herein, registered with the Commission as a broker or dealer or associated with one.

## BACKGROUND OF THE COMPANIES

A. **Sanomedics**

11. Sanomedics, f/k/a "Sanomedics International Holdings, Inc.," is a Delaware corporation with its principal place of business in Miami, Florida. It is purportedly in the business of developing and selling non-contact infrared thermometers. It became a publicly traded company in July 2009 through a reverse merger with a public shell company. It has been an SEC-reporting company since October 27, 2010 and is quoted on OTC Link, which is operated by OTC Markets Group Inc., under the symbol "SIMH." Sizer was a founder of Sanomedics in 2009 and served as its Chief Executive Officer and director until in or about August 2012. Sanomedics' stock is a "penny stock" as defined by the Exchange Act. At all times relevant to this action, the stock's shares traded at less than one dollar per share. During the same time period, Sanomedics' stock did not meet any of the exceptions to penny stock classification pursuant to Exchange Act Section 3(a)(51), 15 U.S.C. § 78c(a)(51), and Rule 3a51-

1, 17 C.F.R. § 240.3a51-1. For example Sanomedics' stock: (a) did not trade on a national securities exchange; (b) was not an "NMS stock," as defined in 17 C.F.R. § 242.600(b)(47); (c) did not have tangible assets (*i.e.*, total assets less intangible assets and liabilities) in excess of $5,000,000; and (d) did not have average revenue of approximately $6,000,000 for the last three years. *See* Exchange Act, Rule 3a51-1(g).

### B. Fun Cool Free

12. Fun Cool Free was incorporated in Delaware on or about November 7, 2014. Fun Cool Free has its principal place of business in Miami, Florida. It is purportedly a distributor of software applications ("apps"). Sizer was the president and a director of Fun Cool Free until August 2015.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d) and 77v(a)], and Sections 21(d), 21(e), and 27(a) of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa(a)].

14. This Court has personal jurisdiction over the Defendants and venue is proper in the Southern District of Florida because many of the acts and transactions constituting the violations alleged in this complaint occurred in this District. Moreover, Defendants reside in the Southern District of Florida and Sanomedics and Fun Cool Free had their principal offices in this District.

15. In connection with the conduct alleged in the complaint, Defendants, directly or indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce or the mails.

## THE FRAUDULENT SCHEME

### A. The Fraudulent Offer and Sale of Sanomedics Stock

16. Beginning in 2009, Sizer acquired and gained control over a substantial number of shares of Sanomedics stock. In 2009, Mesa operated unregistered boiler rooms in South Florida and Southern California. Sizer engaged Mesa and Mesa's boiler room operation to market and sell restricted shares of Sanomedics stock to the public. At the time, Sizer knew that Mesa was not registered with the Commission as a broker or dealer.

17. Beginning in 2009 and continuing until approximately mid-2014, Mesa supervised his boiler room sales agents as they solicited prospective investors, many of whom were elderly and unsophisticated, through cold calling, thereby raising approximately $18 million from the sale of restricted common shares of Sanomedics stock. Sizer provided Mesa pitch points to be used to sell the shares of stock, including a representation that no commissions would be paid on the purchase of Sanomedics stock.

18. Mesa employed at least seven sales agents, purchased lists of contact information for prospective investors, and told the sales agents that they did not need to be licensed to sell the stock. Mesa drafted sales scripts containing material misrepresentations and omissions, including misrepresenting that the sales agents were not paid commissions, and provided the sales scripts to the sales agents. Mesa instructed sales agents to tell investors that their money would be used by the company for research and development. At times, Mesa monitored the sales agents' calls as they solicited prospective investors and directed them as to what to tell prospective investors.

19. Acting on Mesa's instructions, the sales agents offered and sold investors shares of restricted Sanomedics stock at prices set by Sizer and Mesa that ranged from $0.05 - $2.50 per

share.  The sales agents used high pressure sales tactics and promised lucrative profits.  For example, sales agents told investors that a limited number of shares of stock were available at a discount from the market price, guaranteeing them a considerable profit.

20.     Sizer and Mesa agreed that Mesa would instruct the sales agents to tell investors that there was no commission paid to the sales agents, when in fact, Mesa used between 15-20% of the investor funds to pay such commissions.  Sales agents, knowing they were paid commissions, either misrepresented to investors that there were no fees or commissions paid for the purchase of the Sanomedics stock or failed to disclose the commissions to investors.  In order to conceal and further the fraud, the sales agents used false names with investors and falsely told investors that they were employees of Sanomedics.  At times, sales agents falsely told investors that they were paid in shares of Sanomedics stock.

21.     Sizer also personally spoke with some investors.  Sizer marketed and sold Sanomedics stock to investors by making some of the same misrepresentations made by the boiler room sales agents.  Sizer and the sales agents falsely touted Sanomedics as a profitable investment that was raising investor funds to develop and grow its non-contact thermometer business.  Sizer also told investors that he was a large investor and co-founder of Sanomedics and falsely reassured them that Sanomedics was a good value and would likely rise in price.

22.     Sizer, Mesa, and the sales agents raised approximately $18 million selling shares of Sanomedics to more than 600 investors nationwide.  Sizer and Mesa split the approximate $18 million, and Mesa paid 15-20% of the funds he misappropriated to the sales agents as commissions. Sizer was aware and agreed to the payment of commissions to the sales agents.

**B.     The Fraudulent Offer and Sale of Fun Cool Free Stock**

23.     By mid-2014, Sanomedics' public share price had declined significantly making it difficult to continue the fraudulent offer and sale of its shares, so Sizer procured Fun Cool Free as another vehicle to continue the fraud scheme.  Sizer again engaged Mesa and his unregistered boiler rooms to solicit investors to purchase shares of Fun Cool Free stock.  As before, Mesa's sales agents used high pressure sales tactics to offer and sell Fun Cool Free stock emphasizing that investors needed to act immediately or risk missing a lucrative opportunity.   And, as with Sanomedics, Sizer and the sales agents materially misrepresented to investors that Fun Cool Free investor proceeds would not be used to pay sales commissions.

24.     Sizer, Mesa and their sales agents raised approximately $1.4 million through the sale of Fun Cool Free shares to nearly 70 investors nationwide.  Sizer and Mesa split the approximate $1.4 million, and Mesa paid 15-20% of the funds he misappropriated to the sales agents as commissions.  Sizer was aware and agreed to the payment of commissions to the sales agents.

## COUNT I

**Fraud in the Offer or Sale of Securities in Violation of
Section 17(a)(1) of the Securities Act
(Against Sizer and Mesa)**

25.     The Commission repeats and realleges Paragraphs 1 through 24 of this Complaint as if fully set forth herein.

26.     Beginning no later than 2009 and continuing through in or about August 2015, the Defendants, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by use of the mails, in the offer or sale of securities, knowingly or recklessly employed devices, schemes or artifices to defraud.

8

27. By reason of the foregoing, the Defendants directly and indirectly violated, and unless enjoined, are reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

## COUNT II

### Fraud in the Offer or Sale of Securities in Violation of Section 17(a)(2) of the Securities Act
(Against Sizer and Mesa)

28. The Commission repeats and realleges Paragraphs 1 through 24 of this Complaint as if fully set forth herein.

29. Beginning no later than 2009 and continuing through in or about August 2015, the Defendants, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, in the offer or sale of securities, negligently obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading.

30. By reason of the foregoing, the Defendants directly and indirectly violated, and unless enjoined, are reasonably likely to continue to violate, Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

## COUNT III

### Fraud in the Offer or Sale of Securities in Violation of Section 17(a)(3) of the Securities Act
(Against Sizer and Mesa)

31. The Commission repeats and realleges Paragraphs 1 through 24 of this Complaint as if fully set forth herein.

32. Beginning no later than 2009 and continuing through in or about August 2015, the Defendants, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, in the offer or sale of securities negligently engaged in acts, transactions, practices and courses of business which have operated as a fraud or deceit upon purchasers and prospective purchasers of such securities.

33. By reason of the foregoing, the Defendants directly and indirectly violated, and unless enjoined, are reasonably likely to continue to violate, Section 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(3).

## COUNT IV

### Fraud in Violation of Section 10(b) and Rule 10b-5 of the Exchange Act
**(Against Sizer and Mesa)**

34. The Commission repeats and realleges Paragraphs 1 through 24 of this Complaint as if fully set forth herein.

35. Beginning no later than 2009 and continuing through in or about August 2015, the Defendants, directly and indirectly, by use of any means and instrumentalities of interstate commerce, and of the mails, in connection with the purchase or sale of securities, knowingly or recklessly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices and courses of business which operated as a fraud upon the purchasers of such securities.

36. By reason of the foregoing, the Defendants directly and indirectly violated, and unless enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, thereunder.

### COUNT V

### Unlawfully Operating as a Broker-Dealer Without Registering with the Commission in Violation of Section 15(a) of the Exchange Act
**(Against Mesa)**

37. The Commission repeats and realleges Paragraphs 1 through 24 of this Complaint as if fully set forth herein.

38. Beginning no later than 2009 and continuing through in or about August 2015, Defendant Mesa acted as broker or dealer and made use of the mails or any means or instrumentality of interstate commerce to effect transactions in securities, or to induce or attempt to induce the purchase or sale of securities, without being associated with a broker or dealer that was registered with the Commission in accordance with Section 15(b) of the Exchange Act, 15 U.S.C. § 78o(b).

39. By reason of the foregoing, Defendant Mesa directly and indirectly violated, and unless enjoined, is reasonably likely to continue to violate, Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

### COUNT VI

### Aiding and Abetting the Unlawful Operation of a Broker-Dealer not Registered with the Commission in Violation of  Exchange Act Section 15(a) of the Exchange Act
**(Against Sizer)**

40. The Commission repeats and realleges paragraphs 1 through 24 of this complaint as if fully restated herein.

11

41. Beginning no later than 2009 and continuing through in or about August 2015, Defendant Mesa acted as broker or dealer and made use of the mails and any means or instrumentality of interstate commerce to effect transactions in securities, or to induce or attempt to induce the purchase or sale of securities, without being associated with a broker or dealer that was registered with the Commission in accordance with Section 15(b) of the Exchange Act, 15 U.S.C. § 78o(b), and by reason of the of the foregoing violated Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

42. Beginning no later than 2009 and continuing through in or about August 2015, Defendant Sizer knowingly or recklessly aided and abetted violations of Section 15(a) of the Exchange Act by Defendant Mesa. Sizer also, directly and indirectly, had a general awareness that he was part of an overall activity that was improper or illegal and knowingly, or was extremely reckless in not knowing, and provided substantial assistance to violations of Section 15(a) of the Exchange Act.

43. By reason of the foregoing acts, Defendant Sizer aided and abetted and, unless enjoined, is reasonably likely to continue to aid and abet violations of Section 15(a) of the Exchange Act by Defendant Mesa.

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court:

### I.

### Permanent Injunctive Relief

Issue a Permanent Injunction restraining and enjoining: (1) Defendants Sizer and Mesa from violating Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5(a), (b), and (c) thereunder; (2) Defendant Mesa from violating Section 15(a) of the

Exchange Act; and (3) Defendant Sizer from aiding and abetting violations of Section 15(a) of the Exchange Act.

## II.

## Disgorgement

Issue an Order directing the Defendants to disgorge all ill-gotten profits or proceeds received from investors as a result of the acts and/or courses of conduct complained of herein, with prejudgment interest thereon.

## III.

## Civil Money Penalties

Issue an Order directing the Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78(d).

## IV.

## Penny Stock Bars

Issue an Order pursuant to Section 20(g) of the Securities Act, 15 U.S.C. § 77t(g), and Section 21(d)(6) of the Exchange Act, 15 U.S.C. § 78u(d)(6), permanently barring the Defendants from participating in any offering of a penny stock.

## V.

## Officer and Director Bar

Issue an Order permanently barring Defendant Sizer from serving as an officer or director of any public company pursuant to Section 20(e) of the Securities Act, Sections 21(d)(2) and 21(d)(5) of the Exchange Act.

## VI.

### Further Relief

Grant such other and further relief as may be necessary and appropriate.

## VII.

### Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that may hereby be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Dated:  September 26, 2016

             Respectfully submitted,


By: *s/ Alejandro O. Soto*
   Alejandro O. Soto
   Senior Trial Counsel
   Florida Bar No. 172847
   Telephone: (305) 982-6313
   Email: SotoAl@sec.gov


*s/Eric E. Morales*
Eric E. Morales
Attorney
S.D. Fla. Court ID No. A5500886
Telephone: (305) 982-6210
Email: MoralesE@sec.gov

Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida  33131
Telephone: (305) 982-6300
Facsimile:  (305) 536-4154